## THOMAS BREWER *v.* LUCINDA STIVERS, ET AL.

**Contract Between Father and Son—Mental Capacity.**

> An unfair contract by a feeble old man over eighty years old, with his son, executed at the son's house in the absence of other members of the father's family, by which the father gives all his estate to the son in consideration of his being maintained by the son, and stating that the father had been maintained by the son for many years, which was false, cannot be enforced.

### APPEAL FROM FRANKLIN CIRCUIT COURT.

October 4, 1877.

OPINION BY JUDGE PRYOR:

The testimony of the appellant is so unsatisfactory as to the alleged contract between himself and his father as to raise at least a suspicion in the mind of the chancellor that improper influences must have operated upon Thomas Brewer resulting in the contract divesting him of all title to this land. At his advanced age his mind must necessarily have been much impaired, or to such an extent at least as caused him to yield readily to the wishes of those in whom he trusted. The contract, when reduced to writing in the year 1870, being antedated, embraced as a part consideration for the land the support and maintenance of the father and his two daughters and his wife, and if such a consideration in fact existed it would go far towards sustaining the right of the appellant to the land in controversy. It is maintained by appellant that the writing of 1870 only evidences a parol contract made between him and his father in the year 1855, and it is evident that the leading consideration must have been the support of the parties therein named. The obligation certainly rested upon the appellant to discharge this part of the contract, and yet, by his own testimony, the old man and appellant's sisters, from 1855 to 1870, and in fact up to his death, were only supported by him for the short interval of five or six months, the father retaining the farm and living as if no such contract had been made.

For the period for near twenty years the appellant was under an obligation to support his father, yet only supported him for a few months during this whole time. It was maintained, however, that the father preferred to live on the land and support himself, and for this reason the appellant surrendered the possession. The result of this view of the case would be that the father had given the son his land to support him, and the son, in the discharge of his obligation, had surrendered back to the father the land that he might support

himself, and in this manner fulfilled his part of the contract. The fact that the father entered into a contract in 1870, recognizing that his son had supported him for fifteen years prior thereto, when in fact he had only supported him a few months, conduces strongly to show either the exercise of improper influences over him at the time, or that his intellect was so impaired that he failed to comprehend the nature of the writing he was executing. The writing was drawn up and executed at the home of the son, in the absence of any of the father's family except the party benefited by it, founded upon a consideration that never existed, signed by a grantor when he was upwards of eighty years of age, divesting himself of his whole estate, and whose intellect some of the neighbors say was much impaired. Such an obligation cannot be enforced.

Nor is there any convincing proof that any portion of the $500 had been paid; but on the contrary the appellant is himself unable to explain how he discharged this part of the consideration, so as to satisfy the chancellor as to the fairness of the transaction. Although there is proof tending to show that the father was rational when he signed the writing dated in 1870, still the real facts upon which the contract is based are so unreasonable as necessarily to lead to the conclusion that the father did not comprehend what he was doing. Besides, if, during this entire period from 1855 to 1870, the land had been surrendered to the old man that he might live upon it and support himself, if the contract had been thus changed and acquiesced in for so long a period, this action was improperly or prematurely instituted, as under such a contract the father had the right to retain the possession. We are inclined to the conclusion that the indebtedness of the father and the desire, if possible, to preclude his last wife from asserting her claim to dower, prompted the execution as well as the antedating of the writing declared on, and if the decedent, at the time he executed that writing, had been in such a mental condition as to make him fully accountable for his acts we would not hesitate to hold him or his heirs to the contract so far as they could be affected by it, but under the proof we concur with the court below in the conclusion that this writing should be disregarded. The judgment is therefore *affirmed*.

*J. & J. W. Rodman, J. L. Scott, for appellant.*
*Hord & Trabue, for appellees.*